**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

RACHEL TANIBAJEVA,

                       Plaintiff,

     v.

SKY TOP LODGE CORP, et al.,

                  Defendants.

CIVIL ACTION NO. 3:23-CV-01846

(MEHALCHICK, J.)

**MEMORANDUM**

On October 2, 2023, Plaintiff Rachel Tanibajeva ("Tanibajeva") initiated this action by filing a complaint. (Doc. 1). On September 30, 2024, Tanibajeva filed the operative second amended complaint against Defendants Skytop Lodge Corporation d/b/a Skytop Lodge ("Skytop"), Edelrid GmbH & Co., KG d/b/a Edelrid ("Edelrid"), Edelrid North America d/b/a Edelrid ("Edelrid NA"), Challenges Unlimited, Inc. ("CUI"), Challenges Design Innovations, Inc. and/or High Country Hardware ("CDI"), and Petzl America, Inc. ("Petzl") (collectively, "Defendants"). (Doc. 82). Presently before the Court are motions to dismiss for lack of personal jurisdiction filed by CUI and Edelrid. (Doc. 123; Doc. 124). For the following reasons, CUI's motion (Doc. 123) is **DENIED** and Edelrid's motion (Doc. 124) is **GRANTED**.

## I.   BACKGROUND AND PROCEDURAL HISTORY

The following background is taken from the second amended complaint and, for the purposes of the instant motion, is taken as true. (Doc. 82). On October 24, 2021, Tanibajeva, a resident and citizen of New York, went ziplining at Skytop Lodge, a Pennsylvania resort owned and operated by Skytop. (Doc. 82, ¶¶ 1, 2, 32, 41). Plaintiff wore Edelrid ziplining equipment, including an Edelrid Connecto Swivel, a ziplining harness component which

connects a ziplining harness to a belay, which in turn connects to a ziplining cable. (Doc. 82, ¶ 38). While Tanibajeva was ziplining, the lower ring of the Edelrid Connecto Swivel failed and caused Tanibajeva to fall twelve feet to the ground. (Doc. 82, ¶ 39). Edelrid and CUI manufacture and supply ziplining equipment, including the ziplining equipment that Tanibajeva used on the day of her accident. (Doc. 82, ¶ 3, 7). Edelrid is a German corporation. (Doc. 82, ¶ 3). Edelrid NA is an Edelrid subsidiary incorporated and with its principal place of business in Oregon. (Doc. 82, ¶ 4). CUI is incorporated in and with a principal place of business in Canada. (Doc. 82, ¶ 6). CDI is a North Carolina corporation that also manufactures and supplies ziplining equipment, including equipment used at Skytop Lodge at the time of Tanibajeva's accident. (Doc. 82, ¶ 7).

In the operative complaint, Tanibajeva alleges that Defendants are strictly liable for providing Tanibajeva with defective ziplining equipment and liable for negligence in relation to her ziplining accident. (Doc. 82). On October 23, 2024, CDI filed a crossclaim against Skytop, Petzl, Edelrid, Edelrid NA, and CUI alleging that it is entitled to contribution and/or indemnification from Skytop, Petzl, Edelrid, Edelrid NA, and CUI in the event it is found liable for Tanibajeva's injuries. (Doc. 83, at 25-26). On November 4, 2024, Skytop filed a crossclaim against CDI, Petzl, Edelrid, Edelrid NA, and CUI alleging it is entitled to indemnification and/or contribution from CDI, Petzl, Edelrid, Edelrid NA, and CUI in the event it is found liable for Tanibajeva's injuries. (Doc. 92, at 14).

CUI and Edelrid previously moved to dismiss this action for lack of personal jurisdiction. (Doc. 46; Doc. 72). The Court denied CUI and Edelrid's first motions without prejudice but permitted the parties to conduct limited discovery on the issue of jurisdiction. (Doc. 79, at 15-18). After conducting limited discovery, on July 3, 2025, CUI and Edelrid

filed renewed motions to dismiss for lack of jurisdiction. (Doc. 123; Doc. 125; Doc. 125; Doc. 126).

## II.    LEGAL STANDARD

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a claim for lack of personal jurisdiction. Like with Rule 12(b)(6) motions to dismiss, courts accept all allegations in a complaint as true when evaluating Rule 12(b)(2) motions. *See Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002); *see also In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 556 (M.D. Pa. 2009). However, unlike with a Rule 12(b)(6) motion, under Rule 12(b)(2), a defendant may present an affidavit contradicting the plaintiff's allegations establishing personal jurisdiction, and once a defendant presents such an affidavit, the plaintiff "must present similar evidence in support of personal jurisdiction." *Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d at 556. A court may order limited discovery on the issue of personal jurisdiction and consider the evidence adduced during that discovery while deciding on a Rule 12(b)(2) motion. *See Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d at 572-73; *see also Bertles v. Cycle Grp.*, No. CV 18-4707, 2020 WL 1028044, at *4 (E.D. Pa. Mar. 3, 2020).

A Federal Court may exercise personal jurisdiction over a non-resident defendant to the extent permissible under the laws of the state in which the court sits. *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992) (citation omitted). The forum state in this instance is Pennsylvania, and the applicable long arm statute is codified at 42 Pa. Stat. and Cons. Stat. Ann. § 5322(b). This statute permits courts in Pennsylvania to exercise jurisdiction "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the

Constitution of the United States." 42 Pa. Stat. and Cons. Stat. Ann. § 5322(b). Thus, this Court may properly exercise jurisdiction over Defendants so long as it does not violate their due process rights. *See Mellon Bank*, 960 F.2d at 1221.

With respect to this constitutional inquiry, the "Due Process Clause of the Fourteenth Amendment requires that nonresident defendants have 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 299-300 (3d Cir. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Having minimum contacts with another state provides 'fair warning' to a defendant that he or she may be subject to suit in that state." *Kehm Oil*, 537 F.3d at 299-300 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). As such, personal jurisdiction under the Due Process Clause depends upon "the relationship among the defendant[s], the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

There are two types of personal jurisdiction over non-resident defendants—general jurisdiction and specific jurisdiction. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). General jurisdiction may be asserted when a non-resident defendant has maintained "systematic and continuous contacts with the forum state." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 (1984)); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State.") (citing *International Shoe*, 326 U.S. at 317). When subject to the general jurisdiction of a state,

"that [defendant] can be called to answer any claim against [it], regardless of whether the subject matter of the cause of action has any connection to the forum." *Mellon Bank*, 960 F.2d at 1221. Thus, general jurisdiction requires that the defendant's contacts with the forum state are "of the sort that approximate physical presence." *William Rosenstein & Sons Co. v. BBI Produce, Inc.*, 123 F. Supp. 2d 268, 274 (M.D. Pa. 2000) (quoting *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000), *holding modified by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006)).

Pursuant to Pennsylvania's longarm statute, this Court may exercise specific personal jurisdiction over a foreign defendant that "contract[s] to supply services or things in this Commonwealth." 42 Pa.C.S.A. § 5322(a)(2); s*ee Merced v. Gemstar Grp., Inc.*, No. CIV.A. 10-3054, 2015 WL 1182860, at *4 (E.D. Pa. Mar. 13, 2015). "Specific jurisdiction exists when the claim arises from or relates to [the defendant's] conduct purposely directed at the forum state." *Marten*, 499 F.3d at 296 (citing *Helicopteros*, 466 U.S. at 414–15 n.9). To determine whether it has specific jurisdiction over a defendant, the Court must engage in a three-part inquiry. *O'Connor*, 496 F.3d at 317. First, the Court must consider whether the defendants "purposefully directed [their] activities" at the forum state. *O'Connor*, 496 F.3d at 317 (quoting *Burger King*, 471 U.S. at 472). Second, "the litigation must 'arise out of or relate to' at least one of those activities." *O'Connor*, 496 F.3d at 317 (quoting *Helicopteros,* 466 U.S. at 414). Third, if the prior requirements are met, "[the Court] may consider additional factors to ensure that exercising jurisdiction would be consistent with notions of '"fair play and substantial justice."' *O'Connor*, 496 F.3d at 317 (quoting *Burger King*, 471 U.S. at 476).

III.    **DISCUSSION**

5

CUI and Edelrid both contend that they have insufficient minimum contacts with Pennsylvania for the Court to exercise personal jurisdiction over them. (Doc. 125, at 11-25; Doc. 126, at 9-12). CDI, Tanibajeva, and Skytop all counter that the Court has specific personal jurisdiction over CUI and Edelrid because both companies sell ziplining products to Pennsylvania customers and ship those products to Pennsylvania and the cause of action relates to those contacts with Pennsylvania. (Doc. 131, at 16-33; Doc. 132, at 13-24; Doc. 133, at 7-14; Doc. 134, at 3-11; Doc. 135, at 9-15).

The parties agree that the Court does not have general jurisdiction over CUI and Edelrid but dispute whether the Court has specific jurisdiction. (Doc. 125, at 10; Doc. 126, at 10; Doc. 131, at 19; Doc. 132, at 15; Doc. 133, at 7-14; Doc. 134, at 4-11; Doc. 135, at 11-14). Thus, the Court must evaluate whether CUI and Edelrid 1) "purposefully directed [their] activities" into Pennsylvania, 2) this action "arise[s] out of or relate to at least one of those activities" and 3) "whether the exercise of jurisdiction would comport with fair play and substantial justice." *Corigliano v. Classic Motor, Inc.*, 611 F. App'x 77, 79–80 (3d Cir. 2015) (nonprecedential) (citations and internal quotations omitted); *see also Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 564-65 (3d Cir. 2017).

Regarding the first requirement, purposeful direction requires more than a showing that a "defendant 'has injected its goods into the forum state indirectly via the so-called stream of commerce.'" *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018) (quoting *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 104 (3d Cir. 2009)); *see also M. S. v. W. Power Sports, Inc.*, 512 F. Supp. 3d 604, 609 (W.D. Pa. 2021) (stating "[t]he stream of commerce theory has not been adopted by a majority of the Supreme Court, and the Third Circuit has declined to endorse it"). "[W]hat is necessary is a deliberate targeting of the forum,

so efforts to exploit a national market that necessarily included Pennsylvania are insufficient."

*Shuker*, 885 F.3d at 780 (citations and internal quotations omitted); *see also M. S.*, 512 F. Supp. 3d at 609. A defendant purposefully directs activities into a forum state by repeatedly shipping products to the state. *See Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 282 (3d Cir. 1994) (stating "the presence of direct shipments will show the defendant's purposeful availment"); *see also Allen v. Foxway Transportation, Inc.*, No. 4:21-CV-00156, 2022 WL 265945, at *6 (M.D. Pa. Jan. 27, 2022) (finding specific jurisdiction where a defendant "arranged or brokered numerous shipments departing from or arriving in Pennsylvania"); *see also Avicolli v. BJ's Wholesale Club, Inc.*, No. CV 21-1119, 2021 WL 3471167, at *3 (E.D. Pa. Aug. 6, 2021) (stating "[c]ourts have consistently concluded a defendant who directly ships products to a forum state has purposefully availed itself of doing business in that state").

Regarding the second requirement of specific jurisdiction, that the cause of action relates to the defendant's contacts with the state, a court may still exercise jurisdiction even where the defendant "sold the specific [products] involved in [the cause of action] outside the forum [s]tate[.]" *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 366 (2021). A cause of action relates to the defendant's conduct in the forum state where the defendant repeatedly and purposefully sold products identical to those involved in the cause of action to customers in the forum state and shipped such products to the forum state. *See Ford Motor Co.*, 592 U.S. at 366 (finding that Ford's contacts with two forum states related to the cause of action because even though the specific cars involved in the relevant car accidents were sold outside the forum states, Ford sold identical cars within the forum states); *see also Joyner v. OFM, LLC*, No. CV 22-3153, 2023 WL 8005293, at *3 (E.D. Pa. Nov. 17, 2023) (finding that "it does not matter that the single [allegedly defective product] in question that [Plaintiff]

purchased was first shipped to [another state]" because the defendant repeatedly shipped the same product to the forum state).

"Once a plaintiff establishes minimum contacts," a court may exercise jurisdiction unless the defendant meets the heavy burden of establishing that the court exercising jurisdiction would not comport with fair play and substantial justice. *Mendelsohn, Drucker & Assocs. v. Titan Atlas Mfg., Inc.*, 885 F. Supp. 2d 767, 774 (E.D. Pa. 2012) (stating "'[t]he burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy'" (quoting *Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir. 1993)). Courts "consider 'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.'" *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. at 477). Where a defendant repeatedly and purposefully ships products to the forum state, a court may fairly exercise jurisdiction because the defendant "'enjoys the benefits and protection of [the forum state's] laws'—the enforcement of contracts, the defense of property, the resulting formation of effective markets." *Ford Motor Co.*, 592 U.S. at 367 (quoting *Int'l Shoe Co.*, 326 U.S. at 319)*; see Merced*, 2011 WL 5865964, at *5 (stating "[i]t would be fundamentally unjust to allow a foreign corporation to reap the economic benefits of conducting business in this forum while leaving an injured plaintiff remediless"); *see also Sullick v. United Pet Grp., Inc.*, No. CIV.A. 14-2950, 2015 WL 3643988, at *8 (E.D. Pa. June 12, 2015) (stating the same).

A. THE COURT HAS PERSONAL JURISDICTION OVER CUI.

8

According to CUI, its only relevant contact with Pennsylvania is it indirectly selling ziplining equipment to Skytop through CDI, a North Carolina corporation, and shipping that equipment to Skytop at CDI's request. (Doc. 125, at 11-23). CUI posits that such contact with Pennsylvania is too infrequent, indirect, and unrelated to Tanibajeva's cause of action for the Court to exercise jurisdiction over it as a Canadian corporation. (Doc. 125, at 11-25). CDI, Tanibajeva, and Skytop all aver that CUI has had sufficient contacts with Pennsylvania for the Court to exercise specific jurisdiction because CUI repeatedly sold ziplining products to a Pennsylvania resident and shipped ziplining products to Pennsylvania. (Doc. 131, at 19-33; Doc. 133, at 7-14; Doc. 135, at 9-15).

Tanibajeva, CDI, and Skytop have sufficiently shown that CUI purposefully directed its activities into Pennsylvania. CUI invoices reveal that CUI repeatedly sold and shipped ziplining products to Treehouse World, a Pennsylvania business, and shipped the products to Pennsylvania. (Doc. 131-2). CUI sold Treehouse World ziplining products identical to those at issue in this case, such as Edelrid Connecto Swivels, and shipped those products to Pennsylvania. (Doc. 131-2, at 7, 23, 31-32). Further, while CUI invoices show it indirectly sold Skytop ziplining equipment through CDI, a North Carolina company, CUI's president, Bryan Oosterhuis admitted in a sworn declaration that CUI shipped the relevant Skytop ziplining equipment to Pennsylvania at CDI's request. (Doc. 131-2, at 34; Doc. 133-1, at 5). Although the Court previously determined that this shipment alone is insufficient to establish specific jurisdiction, CUI's invoices reveal that the Skytop shipment is just one of multiple repeated instances of CUI purposefully shipping ziplining equipment to Pennsylvania. (Doc. 79, at 13-14; Doc. 131-2). CUI repeatedly selling ziplining equipment to a Pennsylvania customer and shipping ziplining equipment, including the ziplining equipment which

9

allegedly caused Tanibajeva's accident, to Pennsylvania sufficiently establishes that CUI purposefully directed activities into Pennsylvania. (Doc. 131-2; Doc. 133-1, at 5); *see Renner, 33 F.3d at 282*; *see also Allen*, 2022 WL 265945, at *6; *see also Avicolli*, 2021 WL 3471167, at *3.

CUI contends that these sales and shipments are insufficient to establish specific jurisdiction because CUI's prior sales to Treehouse are unrelated to the cause of action. (Doc. 137, at 19-20). CUI's argument is unpersuasive because a court may still exercise specific jurisdiction even where the specific products involved in the cause of action were not sold in the forum state. *See Ford Motor Co.*, 592 U.S. at 366; *see also Joyner*, 2023 WL 8005293, at *3. Tanibajeva's cause of action relates to CUI's contacts with Pennsylvania because CUI repeatedly shipped ziplining equipment to Pennsylvania that was identical to the equipment involved in the cause of action. (Doc. 131-2, at 7, 23, 31-32); *see Ford Motor Co.*, 592 U.S. at 366; *see also Joyner*, 2023 WL 8005293, at *3. Further, while CUI sold the specific ziplining equipment which allegedly caused Tanibajeva's accident to CDI, a North Carolina corporation, it shipped the equipment to Pennsylvania. (Doc. 133-1, at 5). Accordingly, the Court finds that CUI's contacts with Pennsylvania relate to the instant cause of action.

Finally, the Court finds that exercising specific jurisdiction over CUI would "comport with fair play and substantial justice." *Corigliano*, 611 F. App'x at 79–80. The Court agrees with CUI that it, as a Canadian corporation, would be burdened by litigating its case in Pennsylvania. (Doc. 125, at 23-25); see *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 114 (1987) (noting foreign defendants are burdened by litigating their cases in United States forums). However, CUI repeatedly and purposefully sold and shipped ziplining equipment to customers in the United States and Pennsylvania. (Doc. 131-2; Doc. 133-1, at 5). Through

10

these shipments and sales, CUI enjoyed the benefits of doing business in both the United States and Pennsylvania. *See Ford Motor Co.*, 592 U.S. at 367; *see also Merced*, 2011 WL 5865964, at *5.

CUI argues that Pennsylvania's interest in adjudicating this case is limited because Tanibajeva is not a Pennsylvania citizen. (Doc. 125, at 24-25). The Court finds this argument unpersuasive. First, Skytop, a Pennsylvania corporation, raises a crossclaim against CUI, so this case involves a claim against CUI brought by a Pennsylvania citizen. (Doc. 92, at 14). Second, Tanibajeva's accident occurred at a Pennsylvania recreational facility and was allegedly caused by ziplining equipment that CUI shipped to Pennsylvania. (Doc. 82, ¶¶ 40-92; Doc. 133-1, at 5). Pennsylvania has a significant interest in ensuring its recreational facilities are safe and use safe equipment. *See Ford Motor Co.*, 592 U.S. at 368 (finding forum states have significant interests in "enforcing their own safety regulations"); *see also Simons v. Arcan, Inc.*, No. CIV.A. 12-01493, 2013 WL 1285489, at *7 (E.D. Pa. Mar. 28, 2013) (stating "Pennsylvania has a strong interest in ensuring the safety of products that a foreign corporation is sending into the state"). Accordingly, the Court finds that exercising personal jurisdiction over CUI comports with fair play and substantial justice. The Court **DENIES** CUI's motion to dismiss for lack of personal jurisdiction. (Doc. 123).

B.  THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER EDELRID.

Edelrid contends that the Court lacks personal jurisdiction over it because it is a German company that has never sold products directly to Pennsylvania customers or shipped products directly to Pennsylvania. (Doc. 126, at 10-12). CDI, Tanibajeva, and Skytop aver that the Court maintains specific jurisdiction because Edelrid sells ziplining products

11

throughout the United States and in Pennsylvania specifically through Edelrid NA. (Doc. 132, at 13-24; Doc. 134, at 4-11; Doc. 135, at 9-15).

The Court finds that it lacks personal jurisdiction over Edelrid because CDI, Tanibajva, and Skytop have only presented evidence of Edelrid's "efforts to exploit a national market that necessarily included Pennsylvania" which is insufficient to establish specific jurisdiction. *Shuker*, 885 F.3d at 780. CDI presents testimony and sworn statements from Hannes Mayer ("Mayer"), a Sales Manager Professional at Edelrid, in which Mayer states that outside of direct sales to a few long-standing American customers, all of Edelrid's sales to American customers go through Edelrid NA, a subsidiary based in Oregon. (Doc. 132-2, at 3; Doc. 132-3, at 3-4). CDI also presents testimony from Mayer and pictures of marketing materials written in English which suggest that Edelrid markets its ziplining products to American customers through Edelrid NA. (Doc. 132-3, at 6-8; Doc. 132-4). CDI further provides links to Edelrid's website which states Edelrid distributes its products throughout the United States and Canada. (Doc. 132, at 11). This evidence only establishes that Edelrid sells products in the United States national market through a subsidiary and that some of those products may be sold in Pennsylvania as part of the broader national market. Such a showing is insufficient to establish that Edelrid purposefully directed activities into Pennsylvania. *See Shuker*, 885 F.3d at 780; *see also M. S.*, 512 F. Supp. 3d at 609.

The only evidence in the record CDI, Tanibajeva, and Skytop present to tie Edelrid's business directly to Pennsylvania are a series of invoices showing Edelrid sold products to Liberty Mountain, a Utah corporation. (Doc. 134-1). Tanibajeva claims, without a citation to the record, that Liberty Mountain operates a warehouse in Pennsylvania and Liberty Mountain and other retailers sell Edelrid products in Pennsylvania. (Doc. 134, at 3-4). CDI

also provides an affidavit from James Pringle ("Pringle"), a former employer of Philadelphia Rock Gyms, which states that the Liberty Mountain's Pennsylvania warehouse would "regularly purchase Edelrid[] Products" and that Pringle "specifically recall[s Edelrid] would directly ship [merchandise, marketing, and advertising materials] to Philadelphia Rock Gyms location(s) in Pennsylvania." (Doc. 132-5, at 2-3). This evidence is also insufficient to establish specific jurisdiction. First, evidence that Edelrid sold products to retailers such as Liberty Mountain is insufficient because it only shows that Edelrid sold products to third third-party distributors and retailers as part of a national sales campaign. *See Shuker*, 885 F.3d at 780; *see also M. S.*, 512 F. Supp. 3d at 609. Second, the only evidence that specifically pertains to Pennsylvania is Pringle's declaration stating that Liberty Mountain's Pennsylvania warehouse purchased unspecified Edelrid products from an unspecified seller and that Edelrid shipped unspecified merchandise and marketing materials to Pennsylvania rock climbing gyms. (Doc. 132-5, at 2-3). Even if the Court were to find this vague declaration sufficient to establish a deliberate targeting of Pennsylvania, the Court cannot find that the cause of action "relates to at least one of [Edelrid's] activities" in Pennsylvania because Pringle does not clarify what merchandise Edelrid sent to Pennsylvania rock gyms or whether the marketing materials related to products relevant to this action. *Corigliano*, 611 F. App'x at 79–80; *see Ohio Sec. Ins. Co. v. Premium Food Grp., Inc.*, No. CV 21-15690, 2022 WL 2358425, at *5 (D.N.J. June 30, 2022) (finding that "general statements that the defendants conducted business in [the forum state]" are insufficient to establish specific jurisdiction (citing *Witasick v. Estes*, No. CIV.A. 11-3895, 2012 WL 3075988, at *6 (D.N.J. July 30, 2012)). Accordingly, the Court **GRANTS** Edelrid's motion to dismiss for lack of personal jurisdiction. (Doc. 124).

IV.    CONCLUSION

For the foregoing reasons, CUI's motion to dismiss for lack of personal jurisdiction is **DENIED**. (Doc. 123). Edelrid's motion to dismiss for lack of personal jurisdiction is **GRANTED**. (Doc. 124). The claims in the second amended complaint against Edelrid and all crossclaims against Edelrid are **DISMISSED without prejudice** for lack of personal jurisdiction. (Doc. 82; Doc. 83; Doc. 88).

An appropriate Order follows.

**Dated: February 25, 2026**                    *s/ Karoline Mehalchick*
                                        **KAROLINE MEHALCHICK**
                                        **United States District Judge**